**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| IN RE:<br><br>Proctor, Robert Lloyd<br>　　　　　　　　　Debtor | Case No. 20-40697<br>Chapter 7 |

**MOTION TO APPROVE SALE OF REAL PROPERTY**
**LOCATED AT <u>1916 N. PEAK STREET, DALLAS, TEXAS</u>**
**FREE OF LIENS, CLAIMS AND ENCUMBRANCES, WITH LIENS,**
**<u>CLAIMS AND ENCUMBRANCESTO ATTACH TO SALES PROCEEDS</u>**

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you <u>must</u> file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this application unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading <u>*WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE*</u> shown in the certificate of service unless the court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The court reserves the right to set a hearing on any matter.**

　　　　COMES NOW, Linda Payne, the duly qualified and acting Chapter 7 Trustee for the above styled and numbered cause, and files this Motion to Approve Sale of Interest in Property Free of Liens, Claims and Encumbrances, with Liens, Claims and Encumbrances to Attach to Sales Proceeds (the "Motion"), pursuant to 11 U.S.C. §363(f) and Fed.R.Bankr.P. 6004(c), and in support hereof, would show the court as follows:

　　　　1.　　This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter involves the sale of property of the estate and, thus, constitutes a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (N).

2. On March 4, 2020 ("Petition Date") Proctor, Robert Lloyd ("Debtor") filed a voluntary petition under Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code") commencing the above-referenced bankruptcy proceeding. Movant is the Chapter 7 Trustee appointed in this case.

3. As of the Petition Date, one of the assets identified by Debtors on Schedule A of his bankruptcy schedules is 1916 N. Peak Street, Dallas, Texas.

4. Trustee has received an offer (the "Contract") to purchase the Property from David Lloyd ("Purchaser") for the sum of $195,000.00 (the "Purchase Price"). A copy of the Contract is attached hereto as Exhibit "A".

5. Trustee requests authority to enter into the Contract and sell the debtor's interest in the Property pursuant to its terms to Purchaser. Trustee believes the Purchase Price represents the fair market value of the interest in the Property and that the proposed sale is in the best interest of the estate.

6. Trustee requests that (i) the sale be made "as is, where is" without any representations or warranties concerning the condition, suitability or habitability of the Property; (ii) that it be without any representations or warranties as to ownership, title, right or interest in or to any fixtures, personal property or improvements on the Property.

7. Trustee requests authority to sell the interest in the Property free and clear of all liens, claims and encumbrances pursuant to Section 363(f)(3), (4) and/or (5) of the Bankruptcy Code with such liens, claims and encumbrances attaching to the sales proceeds.

8. Trustee requests authorization to pay at closing and, at her discretion, the ad valorem taxes due and owing on the Property, if any, and other closing costs as set forth in the Contract. Closing costs would include the normal costs at a real estate closing including the costs for a title

policy and payment of the any commissions. Finally, Trustee requests authorization to execute all documents necessary to consummate the closing of an approved sale.

9. Trustee requests that in the event that the Purchaser does not close, then the Trustee is authorized to sell the Property to any third party who pays at least $195,000.00 to purchase the Property.

10. Finally, Trustee requests that the fourteen-day stay under Bankruptcy Rule 6004(h) is waived and the entry of the Sale Order and shall be effective and enforceable immediately upon entry.

## **PRAYER**

WHEREFORE, Trustee prays that the Court enter an order pursuant to 11 U.S.C. § 363(f) authorizing her to (i) enter into the Contract, (ii) sell the interest in the Property to Purchasers pursuant to the Contract as described above free and clear of any and all liens, claims and encumbrances with any and all such liens, claims and encumbrances attaching to the sale proceeds (iii) pay ad valorem taxes and closing costs out of the sale proceeds, and (iv) granting this motion and granting the Trustee such other and further relief to which he is justly entitled.

Dated: November 11, 2020

Respectfully submitted,

/s/ Bill F. Payne
Law Offices of Bill F. Payne, P.C.
SBN 15649500
12770 Coit Road, Suite 541
Dallas, TX 75251
Tel 972-628-4901
Email: bill@wpaynelaw.com
ATTORNEY FOR CHAPTER 7 TRUSTEE

PROMULGATED BY THE TEXAS REAL ESTATE COMMISSION (TREC)  12-18

**UNIMPROVED PROPERTY CONTRACT**
NOTICE: Not For Use For Condominium Transactions

TREC

DS *DL*    DS *LP*

1. **PARTIES:** The parties to this contract are **Linda Payne, Chapter 7 Bankrutpcy Trustee for Robert Lloyd Proctor** (Seller) and **David Lloyd** (Buyer). Seller agrees to sell and convey to Buyer and Buyer agrees to buy from Seller the Property defined below.

2. **PROPERTY:** Lot **11**, Block **10065**, **ROSS AVE Parcel 119038000000** Addition, City of **Dallas**, County of **Dallas**, Texas, known as **1916 N Peak Street** **75204** (address/zip code), or as described on attached exhibit together with all rights, privileges and appurtenances pertaining thereto, including but not limited to: water rights, claims, permits, strips and gores, easements, and cooperative or association memberships (the Property). RESERVATIONS: Any reservation for oil, gas, or other minerals, water, timber, or other interests is made in accordance with an attached addendum.

3. **SALES PRICE:**
   A. Cash portion of Sales Price payable by Buyer at closing .................. $ **195,000.00**
   B. Sum of all financing described in the attached: ☐ Third Party Financing Addendum, ☐ Loan Assumption Addendum, ☐ Seller Financing Addendum ................. $ _____
   C. Sales Price (Sum of A and B) ................................................... $ **195,000.00**

4. **LICENSE HOLDER DISCLOSURE:** Texas law requires a real estate license holder who is a party to a transaction or acting on behalf of a spouse, parent, child, business entity in which the license holder owns more than 10%, or a trust for which the license holder acts as trustee or of which the license holder or the license holder's spouse, parent or child is a beneficiary, to notify the other party in writing before entering into a contract of sale. Disclose if applicable: **Buyer is a licensed Real Estate Agent**

5. **EARNEST MONEY:** Within **3** days after the Effective Date, Buyer must deliver $ **1,950.00** as earnest money to **Texas Premier Title**, as escrow agent, at **1600 Preston Rd ste 314** **Dallas** **Tx** **75248** (address). Buyer shall deliver additional earnest money of $ _____ to escrow agent within _____ days after the Effective Date of this contract. If Buyer fails to deliver the earnest money within the time required, Seller may terminate this contract or exercise Seller's remedies under Paragraph 15, or both, by providing notice to Buyer before Buyer delivers the earnest money. If the last day to deliver the earnest money falls on a Saturday, Sunday, or legal holiday, the time to deliver the earnest money is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. **Time is of the essence for this paragraph.**

6. **TITLE POLICY AND SURVEY:**
   A. TITLE POLICY: Seller shall furnish to Buyer at ☒Seller's ☐Buyer's expense an owner's policy of title insurance (Title Policy) issued by **Texas Premier Title** (Title Company) in the amount of the Sales Price, dated at or after closing, insuring Buyer against loss under the provisions of the Title Policy, subject to the promulgated exclusions (including existing building and zoning ordinances) and the following exceptions:
   (1) Restrictive covenants common to the platted subdivision in which the Property is located.
   (2) The standard printed exception for standby fees, taxes and assessments.
   (3) Liens created as part of the financing described in Paragraph 3.
   (4) Utility easements created by the dedication deed or plat of the subdivision in which the Property is located.
   (5) Reservations or exceptions otherwise permitted by this contract or as may be approved by Buyer in writing.
   (6) The standard printed exception as to marital rights.
   (7) The standard printed exception as to waters, tidelands, beaches, streams, and related matters.
   (8) The standard printed exception as to discrepancies, conflicts, shortages in area or boundary lines, encroachments or protrusions, or overlapping improvements:
   ☐(i) will not be amended or deleted from the title policy; or
   ☒(ii) will be amended to read, "shortages in area" at the expense of ☒Buyer ☐Seller.
   (9) The exception or exclusion regarding minerals approved by the Texas Department of Insurance.
   B. COMMITMENT: Within 20 days after the Title Company receives a copy of this contract, Seller shall furnish to Buyer a commitment for title insurance (Commitment) and, at Buyer's expense, legible copies of restrictive covenants and documents evidencing exceptions in the Commitment (Exception Documents) other than the standard printed exceptions. Seller authorizes the Title Company to deliver the Commitment and Exception Documents to Buyer at Buyer's address

DS *DL*    DS *LP*

DS *LP*

Initialed for identification by Buyer **DL** _____ and Seller _____ Instanet TREC NO. 9-13
This copyright protected form was produced using Lone Wolf Real Estate Technologies TXR 1607

Exhibit "A"

Contract Concerning _1205 N. Peak Street_ _Dallas, TX 75204_ Page 5 12-18
(Address of Property)

shown in Paragraph 21. If the Commitment and Exception Documents are not delivered to Buyer within the specified time, the time for delivery will be automatically extended up to 15 days or 3 days before the Closing Date, whichever is earlier. If the Commitment and Exception Documents are not delivered within the time required, Buyer may terminate this contract and the earnest money will be refunded to Buyer.

C. SURVEY: The survey must be made by a registered professional land surveyor acceptable to the Title Company and Buyer's lender(s). (Check one box only)

☒ (1) Within __7__ days after the Effective Date of this contract, Seller shall furnish to Buyer and Title Company Seller's existing survey of the Property and a Residential Real Property Affidavit promulgated by the Texas Department of Insurance (T-47 Affidavit). **If Seller fails to furnish the existing survey or affidavit within the time prescribed, Buyer shall obtain a new survey at Seller's expense no later than 3 days prior to Closing Date.** If the existing survey or affidavit is not acceptable to Title Company or Buyer's lender(s), Buyer shall obtain a new survey at ☐ Seller's ☒ Buyer's expense no later than 3 days prior to Closing Date.

☐ (2) Within _____ days after the Effective Date of this contract, Buyer shall obtain a new survey at Buyer's expense. Buyer is deemed to receive the survey on the date of actual receipt or the date specified in this paragraph, whichever is earlier.

☐ (3) Within _____ days after the Effective Date of this contract, Seller, at Seller's expense shall furnish a new survey to Buyer.

D. OBJECTIONS: Buyer may object in writing to (i) defects, exceptions, or encumbrances to title: disclosed on the survey other than items 6A(1) through (7) above; or disclosed in the Commitment other than items 6A(1) through (9) above; (ii) any portion of the Property lying in a special flood hazard area (Zone V or A) as shown on the current Federal Emergency Management Agency map; or (iii) any exceptions which prohibit the following use or activity:
_____

Buyer must object the earlier of (i) the Closing Date or (ii) __3__ days after Buyer receives the Commitment, Exception Documents, and the survey. Buyer's failure to object within the time allowed will constitute a waiver of Buyer's right to object; except that the requirements in Schedule C of the Commitment are not waived. Provided Seller is not obligated to incur any expense, Seller shall cure any timely objections of Buyer or any third party lender within 15 days after Seller receives the objections (Cure Period) and the Closing Date will be extended as necessary. If objections are not cured within the Cure Period, Buyer may, by delivering notice to Seller within 5 days after the end of the Cure Period: (i) terminate this contract and the earnest money will be refunded to Buyer; or (ii) waive the objections. If Buyer does not terminate within the time required, Buyer shall be deemed to have waived the objections. If the Commitment or Survey is revised or any new Exception Document(s) is delivered, Buyer may object to any new matter revealed in the revised Commitment or Survey or new Exception Document(s) within the same time stated in this paragraph to make objections beginning when the revised Commitment, Survey, or Exception Document(s) is delivered to Buyer.

E. TITLE NOTICES:

(1) ABSTRACT OR TITLE POLICY: Broker advises Buyer to have an abstract of title covering the Property examined by an attorney of Buyer's selection, or Buyer should be furnished with or obtain a Title Policy. If a Title Policy is furnished, the Commitment should be promptly reviewed by an attorney of Buyer's choice due to the time limitations on Buyer's right to object.

(2) MEMBERSHIP IN PROPERTY OWNERS ASSOCIATION(S): The Property ☐ is ☒ is not subject to mandatory membership in a property owners association(s). If the Property is subject to mandatory membership in a property owners association(s), Seller notifies Buyer under §5.012, Texas Property Code, that, as a purchaser of property in the residential community identified in Paragraph 2 in which the Property is located, you are obligated to be a member of the property owners association(s). Restrictive covenants governing the use and occupancy of the Property and all dedicatory instruments governing the establishment, maintenance, and operation of this residential community have been or will be recorded in the Real Property Records of the county in which the Property is located. Copies of the restrictive covenants and dedicatory instruments may be obtained from the county clerk. **You are obligated to pay assessments to the property owners association(s). The amount of the assessments is subject to change. Your failure to pay the assessments could result in enforcement of the association's lien on and the foreclosure of the Property.** Section 207.003, Property Code, entitles an owner to receive copies of any document that governs the establishment, maintenance, or operation of a subdivision, including, but not limited to, restrictions, bylaws, rules and regulations, and a resale certificate from a property owners' association. A resale certificate contains information including, but not limited to, statements specifying the amount and frequency of regular assessments and the style and cause number of lawsuits to which the property owners' association is a party, other than lawsuits relating to unpaid ad valorem taxes of an individual member of the association. These documents must be made available to you by the property owners' association or the association's agent on your request.

**If Buyer is concerned about these matters, the TREC promulgated Addendum for Property Subject to Mandatory Membership in a Property Owners Association should be used.**

Initialed for identification by Buyer _DL_ _____ and Seller _LP_ _____  TREC NO. 9-13
TXR 1607

This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson Crescent #310,

Exhibit "A"

Contract Concerning _____ 1916 W Peak Street _____ Page _____ Dallas _____ 12-18
Address of Property

Case 20-40697    Doc 84    Filed 11/11/20    Entered 11/11/20 10:48:22    Desc Main
Document      Page 6 of 14

(3) **STATUTORY TAX DISTRICTS:** If the Property is situated in a utility or other statutorily created district providing water, sewer, drainage, or flood control facilities and services, Chapter 49, Texas Water Code, requires Seller to deliver and Buyer to sign the statutory notice relating to the tax rate, bonded indebtedness, or standby fee of the district prior to final execution of this contract.

(4) **TIDE WATERS:** If the Property abuts the tidally influenced waters of the state, §33.135, Texas Natural Resources Code, requires a notice regarding coastal area property to be included in the contract. An addendum containing the notice promulgated by TREC or required by the parties must be used.

(5) **ANNEXATION:** If the Property is located outside the limits of a municipality, Seller notifies Buyer under §5.011, Texas Property Code, that the Property may now or later be included in the extraterritorial jurisdiction of a municipality and may now or later be subject to annexation by the municipality. Each municipality maintains a map that depicts its boundaries and extraterritorial jurisdiction. To determine if the Property is located within a municipality's extraterritorial jurisdiction or is likely to be located within a municipality's extraterritorial jurisdiction, contact all municipalities located in the general proximity of the Property for further information.

(6) **PROPERTY LOCATED IN A CERTIFICATED SERVICE AREA OF A UTILITY SERVICE PROVIDER:** Notice required by §13.257, Water Code: The real property, described in Paragraph 2, that you are about to purchase may be located in a certificated water or sewer service area, which is authorized by law to provide water or sewer service to the properties in the certificated area. If your property is located in a certificated area there may be special costs or charges that you will be required to pay before you can receive water or sewer service. There may be a period required to construct lines or other facilities necessary to provide water or sewer service to your property. You are advised to determine if the property is in a certificated area and contact the utility service provider to determine the cost that you will be required to pay and the period, if any, that is required to provide water or sewer service to your property. The undersigned Buyer hereby acknowledges receipt of the foregoing notice at or before the execution of a binding contract for the purchase of the real property described in Paragraph 2 or at closing of purchase of the real property.

(7) **PUBLIC IMPROVEMENT DISTRICTS:** If the Property is in a public improvement district, §5.014, Property Code, requires Seller to notify Buyer as follows: As a purchaser of this parcel of real property you are obligated to pay an assessment to a municipality or county for an improvement project undertaken by a public improvement district under Chapter 372, Local Government Code. The assessment may be due annually or in periodic installments. More information concerning the amount of the assessment and the due dates of that assessment may be obtained from the municipality or county levying the assessment. The amount of the assessments is subject to change. Your failure to pay the assessments could result in a lien on and the foreclosure of your property.

(8) **TEXAS AGRICULTURAL DEVELOPMENT DISTRICT:** The Property ☐ is ☒ is not located in a Texas Agricultural Development District. For additional information, contact the Texas Department of Agriculture.

(9) **TRANSFER FEES:** If the Property is subject to a private transfer fee obligation, §5.205, Property Code requires Seller to notify Buyer as follows: The private transfer fee obligation may be governed by Chapter 5, Subchapter G of the Texas Property Code.

(10) **PROPANE GAS SYSTEM SERVICE AREA:** If the Property is located in a propane gas system service area owned by a distribution system retailer, Seller must give Buyer written notice as required by §141.010, Texas Utilities Code. An addendum containing the notice approved by TREC or required by the parties should be used.

(11) **NOTICE OF WATER LEVEL FLUCTUATIONS:** If the Property adjoins an impoundment of water, including a reservoir or lake, constructed and maintained under Chapter 11, Water Code, that has a storage capacity of at least 5,000 acre-feet at the impoundment's normal operating level, Seller hereby notifies Buyer: "The water level of the impoundment of water adjoining the Property fluctuates for various reasons, including as a result of: (1) an entity lawfully exercising its right to use the water stored in the impoundment; or (2) drought or flood conditions."

**7. PROPERTY CONDITION:**

A. **ACCESS, INSPECTIONS AND UTILITIES:** Seller shall permit Buyer and Buyer's agents access to the Property at reasonable times. Buyer may have the Property inspected by inspectors selected by Buyer and licensed by TREC or otherwise permitted by law to make inspections. Seller at Seller's expense shall immediately cause existing utilities to be turned on and shall keep the utilities on during the time this contract is in effect.
**NOTICE:** Buyer should determine the availability of utilities to the Property suitable to satisfy Buyer's needs.

B. **ACCEPTANCE OF PROPERTY CONDITION:** "As Is" means the present condition of the Property with any and all defects and without warranty except for the warranties of title and the warranties in this contract. Buyer's agreement to accept the Property As Is under Paragraph 7B (1) or (2) does not preclude Buyer from inspecting the Property under Paragraph 7A, from negotiating repairs or treatments in a subsequent amendment, or from terminating this contract during the Option Period, if any.

Initialed for identification by Buyer _DL_ _____ and Seller _LP_ _DS_ _____ Instanetforms TREC NO. 9-13
This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson Crescent #310, TXR 1607

Contract Concerning 1816 E Peak Street, Dallas, TX 75204

(Check one box only)
- ☒ (1) Buyer accepts the Property As Is.
- ☐ (2) Buyer accepts the Property As Is provided Seller, at Seller's expense, shall complete the following specific repairs and treatments: _____

(Do not insert general phrases, such as "subject to inspections" that do not identify specific repairs and treatments.)

C. **COMPLETION OF REPAIRS:** Unless otherwise agreed in writing: (i) Seller shall complete all agreed repairs and treatments prior to the Closing Date; and (ii) all required permits must be obtained, and repairs and treatments must be performed by persons who are licensed to provide such repairs or treatments or, if no license is required by law, are commercially engaged in the trade of providing such repairs or treatments. At Buyer's election, any transferable warranties received by Seller with respect to the repairs and treatments will be transferred to Buyer at Buyer's expense. If Seller fails to complete any agreed repairs and treatments prior to the Closing Date, Buyer may exercise remedies under Paragraph 15 or extend the Closing Date up to 5 days, if necessary, for Seller to complete repairs and treatments.

D. **ENVIRONMENTAL MATTERS:** Buyer is advised that the presence of wetlands, toxic substances, including asbestos and wastes or other environmental hazards, or the presence of a threatened or endangered species or its habitat may affect Buyer's intended use of the Property. If Buyer is concerned about these matters, an addendum promulgated by TREC or required by the parties should be used.

E. **SELLER'S DISCLOSURES:** Except as otherwise disclosed in this contract, Seller has no knowledge of the following:
(1) any flooding of the Property which has had a material adverse effect on the use of the Property;
(2) any pending or threatened litigation, condemnation, or special assessment affecting the Property;
(3) any environmental hazards that materially and adversely affect the Property;
(4) any dumpsite, landfill, or underground tanks or containers now or previously located on the Property;
(5) any wetlands, as defined by federal or state law or regulation, affecting the Property; or
(6) any threatened or endangered species or their habitat affecting the Property.

8. **BROKERS' FEES:** All obligations of the parties for payment of brokers' fees are contained in separate written agreements.

9. **CLOSING:**
A. The closing of the sale will be on or before ___December 3___, 20_20_, or within 7 days after objections made under Paragraph 6D have been cured or waived, whichever date is later (Closing Date). If either party fails to close the sale by the Closing Date, the non-defaulting party may exercise the remedies contained in Paragraph 15.
B. At closing:
(1) Seller shall execute and deliver a general warranty deed conveying title to the Property to Buyer and showing no additional exceptions to those permitted in Paragraph 6 and furnish tax statements or certificates showing no delinquent taxes on the Property.
(2) Buyer shall pay the Sales Price in good funds acceptable to the escrow agent.
(3) Seller and Buyer shall execute and deliver any notices, statements, certificates, affidavits, releases, loan documents and other documents reasonably required for the closing of the sale and the issuance of the Title Policy.
(4) There will be no liens, assessments, or security interests against the Property which will not be satisfied out of the sales proceeds unless securing the payment of any loans assumed by Buyer and assumed loans will not be in default.

10. **POSSESSION:**
A. Buyer's Possession: Seller shall deliver to Buyer possession of the Property in its present or required condition upon closing and funding.
B. Leases:
(1) After the Effective Date, Seller may not execute any lease (including but not limited to mineral leases) or convey any interest in the Property without Buyer's written consent.
(2) If the Property is subject to any lease to which Seller is a party, Seller shall deliver to Buyer copies of the lease(s) and any move-in condition form signed by the tenant within 7 days after the Effective Date of the contract.

11. **SPECIAL PROVISIONS:** (Insert only factual statements and business details applicable to the sale. TREC rules prohibit license holders from adding factual statements or business details for which a contract addendum or other form has been promulgated by TREC for mandatory use.)

The Property is being sold "as-is", "where is" without any warranties of any kind and the sale of the Property is subject to approval by the United States Bankruptcy Court, Eastern District. If the bankruptcy court does not approve the sale, this contract shall terminate and the Earnest Money shall returned to Buyer.

Initialed for identification by Buyer __DL__ and Seller __LP__   TREC NO. 9-13
TXR 1607

Exhibit "A"

Contract Concerning 1915 N Peak Street, Dallas, TX 75204 Page 5 of 9 12-18
(Address of Property)

**12. SETTLEMENT AND OTHER EXPENSES:**
A. The following expenses must be paid at or prior to closing:
(1) Expenses payable by Seller (Seller's Expenses):
(a) Releases of existing liens, including prepayment penalties and recording fees; release of Seller's loan liability; tax statements or certificates; preparation of deed; one-half of escrow fee; and other expenses payable by Seller under this contract.
(b) Seller shall also pay an amount not to exceed $ 0.00 to be applied in the following order: Buyer's Expenses which Buyer is prohibited from paying by FHA, VA, Texas Veterans Land Board or other governmental loan programs, and then to other Buyer's Expenses as allowed by the lender.
(2) Expenses payable by Buyer (Buyer's Expenses): Appraisal fees; loan application fees; origination charges; credit reports; preparation of loan documents; interest on the notes from date of disbursement to one month prior to dates of first monthly payments; recording fees; copies of easements and restrictions; loan title policy with endorsements required by lender; loan-related inspection fees; photos; amortization schedules; one-half of escrow fee; all prepaid items, including required premiums for flood and hazard insurance, reserve deposits for insurance, ad valorem taxes and special governmental assessments; final compliance inspection; courier fee; repair inspection; underwriting fee; wire transfer fee; expenses incident to any loan; Private Mortgage Insurance Premium (PMI), VA Loan Funding Fee, or FHA Mortgage Insurance Premium (MIP) as required by the lender; and other expenses payable by Buyer under this contract.
B. If any expense exceeds an amount expressly stated in this contract for such expense to be paid by a party, that party may terminate this contract unless the other party agrees to pay such excess. Buyer may not pay charges and fees expressly prohibited by FHA, VA, Texas Veterans Land Board or other governmental loan program regulations.

**13. PRORATIONS AND ROLLBACK TAXES:**
A. **PRORATIONS:** Taxes for the current year, interest, maintenance fees, assessments, dues and rents will be prorated through the Closing Date. The tax proration may be calculated taking into consideration any change in exemptions that will affect the current year's taxes. If taxes for the current year vary from the amount prorated at closing, the parties shall adjust the prorations when tax statements for the current year are available. If taxes are not paid at or prior to closing, Buyer shall pay taxes for the current year.
B. **ROLLBACK TAXES:** If this sale or Buyer's use of the Property after closing results in the assessment of additional taxes, penalties or interest (Assessments) for periods prior to closing, the Assessments will be the obligation of Buyer. If Assessments are imposed because of Seller's use or change in use of the Property prior to closing, the Assessments will be the obligation of Seller. Obligations imposed by this paragraph will survive closing.

**14. CASUALTY LOSS:** If any part of the Property is damaged or destroyed by fire or other casualty after the Effective Date of this contract, Seller shall restore the Property to its previous condition as soon as reasonably possible, but in any event by the Closing Date. If Seller fails to do so due to factors beyond Seller's control, Buyer may (a) terminate this contract and the earnest money will be refunded to Buyer (b) extend the time for performance up to 15 days and the Closing Date will be extended as necessary or (c) accept the Property in its damaged condition with an assignment of insurance proceeds, if permitted by Seller's insurance carrier, and receive credit from Seller at closing in the amount of the deductible under the insurance policy. Seller's obligations under this paragraph are independent of any other obligations of Seller under this contract.

**15. DEFAULT:** If Buyer fails to comply with this contract, Buyer will be in default, and Seller may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money as liquidated damages, thereby releasing both parties from this contract. If Seller fails to comply with this contract, Seller will be in default and Buyer may (a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract.

**16. MEDIATION:** It is the policy of the State of Texas to encourage resolution of disputes through alternative dispute resolution procedures such as mediation. Any dispute between Seller and Buyer related to this contract which is not resolved through informal discussion will be submitted to a mutually acceptable mediation service or provider. The parties to the mediation shall bear the mediation costs equally. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

**17. ATTORNEY'S FEES:** A Buyer, Seller, Listing Broker, Other Broker, or escrow agent who prevails in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding.

**18. ESCROW:**
A. **ESCROW:** The escrow agent is not (i) a party to this contract and does not have liability for the performance or nonperformance of any party to this contract, (ii) liable for interest on the earnest money and (iii) liable for the loss of any earnest money caused by the failure of any financial institution in which the earnest money has been deposited unless the financial institution is acting as escrow agent.
B. **EXPENSES:** At closing, the earnest money must be applied first to any cash down payment, then to Buyer's Expenses and any excess refunded to Buyer. If no closing occurs, escrow

Initialed for identification by Buyer _DL_ ____ and Seller _____ _____  Instanetforms  TREC NO. 9-13
This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson Crescent #310,
Cambridge, Ontario, Canada N1T 1J5    TXR 1607

Contract Concerning 1916 N Peak Street, Dallas, TX 75204 Page 6 of 9 12-18

agent may: (i) require a written release of liability of the escrow agent from all parties, (ii) require payment of unpaid expenses incurred on behalf of a party, and (iii) only deduct from the earnest money the amount of unpaid expenses incurred on behalf of the party receiving the earnest money.

C. **DEMAND:** Upon termination of this contract, either party or the escrow agent may send a release of earnest money to each party and the parties shall execute counterparts of the release and deliver same to the escrow agent. If either party fails to execute the release, either party may make a written demand to the escrow agent for the earnest money. If only one party makes written demand for the earnest money, escrow agent shall promptly provide a copy of the demand to the other party. If escrow agent does not receive written objection to the demand from the other party within 15 days, escrow agent may disburse the earnest money to the party making demand reduced by the amount of unpaid expenses incurred on behalf of the party receiving the earnest money and escrow agent may pay the same to the creditors. If escrow agent complies with the provisions of this paragraph, each party hereby releases escrow agent from all adverse claims related to the disbursal of the earnest money.

D. **DAMAGES:** Any party who wrongfully fails or refuses to sign a release acceptable to the escrow agent within 7 days of receipt of the request will be liable to the other party for (i) damages; (ii) the earnest money; (iii) reasonable attorney's fees; and (iv) all costs of suit.

E. **NOTICES:** Escrow agent's notices will be effective when sent in compliance with Paragraph 21. Notice of objection to the demand will be deemed effective upon receipt by escrow agent.

19. **REPRESENTATIONS:** All covenants, representations and warranties in this contract survive closing. If any representation of Seller in this contract is untrue on the Closing Date, Seller will be in default. Unless expressly prohibited by written agreement, Seller may continue to show the Property and receive, negotiate and accept back up offers.

20. **FEDERAL TAX REQUIREMENTS:** If Seller is a "foreign person," as defined by Internal Revenue Code and its regulations, or if Seller fails to deliver an affidavit or a certificate of non-foreign status to Buyer that Seller is not a "foreign person," then Buyer shall withhold from the sales proceeds an amount sufficient to comply with applicable tax law and deliver the same to the Internal Revenue Service together with appropriate tax forms. Internal Revenue Service regulations require filing written reports if currency in excess of specified amounts is received in the transaction.

21. **NOTICES:** All notices from one party to the other must be in writing and are effective when mailed to, hand-delivered at, or transmitted by fax or electronic transmission as follows:

| To Buyer at: | CC: Jason@thedesk.vip | To Seller at: | Chapter 7 Trustee |
|---|---|---|---|
| CC: Elaine@elainecmiller.com | | | 12770 Coit Road, Suite 541, Dallas, TX 75251 |
| Phone: | | Phone: | 972 628 4904 |
| Fax: | | Fax: | |
| E-mail: | dlloyd7787@yahoo.com | E-mail: | linda@paynetrustee.com |

22. **AGREEMENT OF PARTIES:** This contract contains the entire agreement of the parties and cannot be changed except by their written agreement. Addenda which are a part of this contract are (check all applicable boxes):

- ☐ Third Party Financing Addendum
- ☐ Seller Financing Addendum
- ☐ Addendum for Property Subject to Mandatory Membership in a Property Owners Association
- ☐ Buyer's Temporary Residential Lease
- ☐ Seller's Temporary Residential Lease
- ☐ Addendum for Reservation of Oil, Gas and Other Minerals
- ☐ Addendum for "Back-Up" Contract
- ☐ Addendum Concerning Right to Terminate Due to Lender's Appraisal
- ☐ Addendum for Coastal Area Property
- ☐ Environmental Assessment, Threatened or Endangered Species and Wetlands Addendum
- ☐ Addendum for Property Located Seaward of the Gulf Intracoastal Waterway
- ☐ Addendum for Sale of Other Property by Buyer
- ☐ Addendum for Property in a Propane Gas System Service Area
- ☐ Other (list):

Initialed for identification by Buyer __DL__ and Seller __LP__  InstanetForms  TREC NO. 9-13

This copyright protected form was produced using Lone Wolf Real Estate Technologies – 231 Shearson Crescent 1510,  TXR 1607

Exhibit "A"

Contract Concerning _____ 2-18
               (Address of Property)

**23. TERMINATION OPTION:** For nominal consideration, the receipt of which is hereby acknowledged by Seller, and Buyer's agreement to pay Seller $ __50.00__ (Option Fee) within 3 days after the Effective Date of this contract, Seller grants Buyer the unrestricted right to terminate this contract by giving notice of termination to Seller within __7__ days after the Effective Date of this contract (Option Period). Notices under this paragraph must be given by 5:00 p.m. (local time where the Property is located) by the date specified. If no dollar amount is stated as the Option Fee or if Buyer fails to pay the Option Fee to Seller within the time prescribed, this paragraph will not be a part of this contract and Buyer shall not have the unrestricted right to terminate this contract. If Buyer gives notice of termination within the time prescribed, the Option Fee will not be refunded; however, any earnest money will be refunded to Buyer. The Option Fee ☒ will ☐ will not be credited to the Sales Price at closing. **Time is of the essence for this paragraph and strict compliance with the time for performance is required.**

**24. CONSULT AN ATTORNEY BEFORE SIGNING:** TREC rules prohibit real estate license holders from giving legal advice. READ THIS CONTRACT CAREFULLY.

Buyer's Attorney Is: _____

Seller's Attorney Is: _____

Phone: _____

Phone: _____

Fax: _____

Fax: _____

E-mail: _____

E-mail: _____

EXECUTED the _____ day of _____, 20____ (Effective Date).
(BROKER: FILL IN THE DATE OF FINAL ACCEPTANCE.)

Buyer: *David Lloyd* — David Lloyd

Seller: *Linda Payne* (DocuSigned by, 82FC72FC0B80445...) — Linda Payne, Chapter 7 Bankruptcy Trustee

Buyer: _____

Seller: _____

The form of this contract has been approved by the Texas Real Estate Commission. TREC forms are intended for use only by trained real estate license holders. No representation is made as to the legal validity or adequacy of any provision in any specific transactions. It is not intended for complex transactions. Texas Real Estate Commission, P.O. Box 12188, Austin, TX 78711-2188, (512) 936-3000 (http://www.trec.texas.gov) TREC NO. 9-13. This form replaces TREC NO. 9-12.

Initialed for identification by Buyer __DL__ and Seller __LP__    TREC NO. 9-13
                                                                  TXR 1607

This copyright protected form was produced using Lone Wolf Real Estate Technologies - 221 Shearson Crescent #310, Cambridge, Ontario, Canada N1T 1J6

Exhibit "A"

## BROKER INFORMATION
(Print name(s) only. Do not sign)

| Competitive Edge Realty LLC | 9004661 | | Carey Cox Company | 0385233 |
|---|---|---|---|---|
| Other Broker Firm | License No. | | Listing Broker Firm | License No. |

represents ☒ Buyer only as Buyer's agent
☐ Seller as Listing Broker's subagent

represents ☐ Seller and Buyer as an intermediary
☒ Seller only as Seller's agent

| David Lloyd | 0731777 | | Staci Heuvel | 687838 |
|---|---|---|---|---|
| Associate's Name | License No. | | Listing Associate's Name | License No. |

| dlloyd7787@yahoo.com | (972) 849-5691 | | staci@careycoxcompany.com | (972) 562-8003 |
|---|---|---|---|---|
| Associate's Email Address | Phone | | Listing Associate's Email Address | Phone |

| Mal Smith | 0353156 | | Bill Cox | 0341788 |
|---|---|---|---|---|
| Licensed Supervisor of Associate | License No. | | Licensed Supervisor of Listing Associate | License No. |

| 8005 Fallmeadow Cir | (972) 200-3685 | | 321 N Central Expwy #370 | (972) 562-8003 |
|---|---|---|---|---|
| Other Broker's Address | Phone | | Listing Broker's Office Address | Phone |

| Plano | TX | 75024 | McKinney | TX | 75070 |
|---|---|---|---|---|---|
| City | State | Zip | City | State | Zip |

| | |
|---|---|
| Selling Associate's Name | License No. |

| | |
|---|---|
| Selling Associate's Email Address | Phone |

| | |
|---|---|
| Licensed Supervisor of Selling Associate | License No. |

Selling Associate's Office Address

| | | |
|---|---|---|
| City | State | Zip |

Listing Broker has agreed to pay Other Broker ____3.00%____ of the total sales price when the Listing Broker's fee is received. Escrow agent is authorized and directed to pay Other Broker from Listing Broker's fee at closing.

Initials: DL, LP, SH

TREC NO. 9-13
TXR 1607

Exhibit "A"

Contract Concerning 1916 N Peak Street Dallas TX 75204 Page 9 of 9 12-18
(Address of Property)

## OPTION FEE RECEIPT

Receipt of $_____ (Option Fee) in the form of _____ is acknowledged.

Seller or Listing Broker _____  Date _____

## EARNEST MONEY RECEIPT

Receipt of $_____ Earnest Money in the form of _____ is acknowledged.

Escrow Agent: Jason Ramsey  Received by _____  Email Address: jramsey@txprem.com  Date/Time _____
Address: 1600 Preston Rd ste 314  Phone _____
City: Dallas  State: Tx  Zip: 75248  Fax _____

## CONTRACT RECEIPT

Receipt of the Contract is acknowledged.

Escrow Agent _____  Received by _____  Email Address _____  Date _____
Address _____  Phone _____
City _____  State _____  Zip _____  Fax _____

## ADDITIONAL EARNEST MONEY RECEIPT

Receipt of $_____ additional Earnest Money in the form of _____ is acknowledged.

Escrow Agent _____  Received by _____  Email Address _____  Date/Time _____
Address _____  Phone _____
City _____  State _____  Zip _____  Fax _____

This copyright protected form was produced using Lone Wolf Real Estate Technologies - 231 Shearson Crescent #310, Cambridge, Ontario, Canada N1T 1J5

Instanet TREC NO. 9-13
TXR 1607

Exhibit "A"

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a copy of the foregoing instrument was served on the parties on the attached mailing list in accordance with LBR 9013(f) either through the Court's electronic notification system as permitted by Appendix 5005 III. E. to the Local Rules of the U.S. Bankruptcy Court for the Eastern District of Texas, or by first class United States Mail, postage prepaid on November 11, 2020.

/s/ *Bill F. Payne*
Bill F. Payne

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0540-4<br>Case 20-40697<br>Eastern District of Texas<br>Sherman<br>Wed Nov 11 10:26:18 CST 2020 | Tara B. Annweiler<br>Greer, Herz & Adams<br>One Moody Plaza, 18th Floor<br>Galveston, TX 77550-7998 | Douglas J. Buncher<br>325 N. St. Paul<br>Suite 3600<br>Dallas, TX 75201-3833 |
| John P. Dillman<br>P.O. Box 3064<br>Houston, TX 77253-3064 | Abbey U. Dreher<br>Barrett Daffin Frappier Turner & Engel<br>4004 Beltline Road, Suite 100<br>Addison, TX 75001-4320 | Susan B. Hersh<br>Susan B. Hersh, P.C.<br>12770 Coit Road<br>Suite 1100<br>Dallas, TX 75251-1329 |
| Gary G. Lyon<br>6401 W. Eldorado Parkway<br>Suite 234<br>McKinney, TX 75070-6199 | Patrick J. Neligan Jr.<br>Neligan, Andrews & Foley, L.L.P.<br>325 N. St. Paul<br>Suite 3600<br>Dallas, TX 75201-3833 | Bill F. Payne<br>12770 Coit Road, Suite 541<br>Dallas, TX 75251-1366 |
| Linda S Payne<br>Chapter 7 Bankruptcy Trustee<br>12770 Coit Road, Suite 541<br>Dallas, TX 75251-1366 | Robert Lloyd Proctor<br>204 Windy Lane<br>Rockwall, TX 75087-8005 | Laurie A. Spindler<br>Linebarger, Goggan, Blair & Sampson<br>2777 N. Stemmons Frwy Ste 1000<br>Dallas, TX 75207-2328 |
| US Trustee<br>Office of the U.S. Trustee<br>110 N. College Ave.<br>Suite 300<br>Tyler, TX 75702-7231 | | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | |
|---|---|
| (d)Linda S Payne<br>Chapter 7 Bankruptcy Trustee<br>12770 Coit Road, Suite 541<br>Dallas, TX 75251-1366 | End of Label Matrix<br>Mailable recipients    12<br>Bypassed recipients     1<br>Total                  13 |